**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DESMOND THORNTON,**

      **Plaintiff,**

**vs.**                       **Case No.: 8:09-cv-00041-JDW-EAJ**

**CITY OF TAMPA, FLORIDA, and**
**KATHLEEN ATILES,**

      **Defendants.**

_____/

## ORDER

      **BEFORE THE COURT** is Defendants' motion for summary judgment (Dkt. 14) and Plaintiff's memorandum in opposition (Dkt. 16). Upon consideration, the motion (Dkt. 14) is **GRANTED IN PART** and **DENIED IN PART.**

*Background*

      This action arises from the misidentification of Desmond Thornton in a probable cause affidavit submitted to secure a warrant for his arrest. The facts are described below in the light most favorable to Thornton.

      In June 2004, City of Tampa Police Officer Kathleen Atiles was assigned to a specialized narcotics unit which conducted undercover drug buying operations. (Atiles Aff. ¶¶ 4-6). During one of the undercover operations, Officer Atiles purchased crack cocaine from a man she did not know. (Atiles Aff. ¶ 15, Ex. B, pp. 3-4). A hidden video camera captured the transaction. (*Id.*). The videotape clearly depicts the face of the man as he sells the narcotics to Officer Atiles. (Dkt. 27, Videotape). He is not Thornton. (Atiles Aff. ¶ 38). As Officer Atiles drives away, she describes the man and estimates that he is 30 to 35 years old. (Videotape).

1

Officer Atiles prepared a supplement to her unit's police report of the incident. (Atiles Aff. ¶ 15, Ex. B). According to her supplement, Officer Neal responded to the area after the transaction, where he "located and identified Thornton." (Atiles Aff. Ex. B, p. 4). Officer Atiles averred that she only included Thornton in the report because the other officers informed her of his name. (Atiles Aff. ¶ 39). However, Officer Atiles' supplement states, "Their pictures were pulled and I identified them," which, she testified, refers to the man from whom she purchased the drugs and another suspect involved in the transaction. (Atiles Aff. Ex. B, p. 4; Atiles Dep. 31-37).

Officer Atiles has no independent recollection of the events memorialized in the report. (Atiles Aff. ¶ 15). Nor does she remember viewing pictures of the men. (Atiles Dep. 32). She could not recall whether she identified Thornton from a driver's license photograph, booking photograph, or another type of picture. (Atiles Dep. 32-37; Atiles Aff. ¶ 25). She has no recollection as to whether she even viewed a picture of Thornton. (Atiles Aff. ¶ 25).

Officer Atiles' unit subsequently prepared a criminal report affidavit which described the incident. (Atiles Aff. ¶¶ 27-33). In support of the "facts to establish probable cause that a crime was committed by the defendant," the affidavit stated, "on the listed date the defendant sold for $20 1 piece of crack cocaine to officer Atilles [sic] working in an undercover capacity. The cocaine tested positive by Detrio. . . . Affiant [sic] positively identified by Affiant." (Atiles Aff. Ex. C, p. 2). Although Officer Atiles did not prepare the handwritten affidavit, she signed the document, certifying, "I swear that the above statements are correct to the best of my knowledge." (Atiles Aff. ¶ 28, Ex. C, p. 2).

On November 10, 2004, a state circuit court judge issued an arrest warrant for Thornton based on the affidavit. (Atiles Aff. Ex. D). After learning of the warrant, Thornton surrendered to the Hillsborough County Jail. (Thornton Dep. 12-15). He was released approximately five hours

later. (Thornton Dep. 36).

On November 30, 2004, the State Attorney's Office filed a two-count Information which charged Thornton with delivery of a controlled substance within 1000 feet of a school and possession of a controlled substance. (Dkt. 14-2). Thornton's attorney obtained the police report and videotape during discovery in the criminal case. (Thornton Dep. 18-19). It is undisputed that Thornton is not the man depicted in the video. (Atiles Aff. ¶ 38). Approximately six months after filing the Information, the State Attorney's Office filed a *nolle prosequi.* (Answer ¶ 27). Thornton's record was eventually expunged. (Thornton Dep. 28-29).

Thornton brought this 42 U.S.C. § 1983 action, alleging that Officer Atiles violated his Fourth Amendment right to be free from unreasonable seizure. Thornton also contends that the City of Tampa is liable for false arrest pursuant to Florida Statute § 768.28. Defendants moved for summary judgment, arguing that qualified immunity protects Officer Atiles, and sovereign immunity protects the City of Tampa.

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. In ruling on a motion for summary judgment, all the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the

3

nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

Because all evidence and factual inferences must be taken in the light most favorable to Thornton, the "facts" stated in ruling on Defendants' summary judgment motion are "the facts for present purposes, but they may not be the actual facts." *Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994) (quotation omitted). "For that reason, a defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law." *Id.*

## Discussion

*A. Officer Atiles*

Section 1983 imposes civil liability on any person who, under color of state law, causes a person to be subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute is not a source of substantive rights but "provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994) (quotation omitted). Thornton argues that Officer Atiles violated his Fourth Amendment right to be free from arrest without probable cause. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized").

Officer Atiles contends that she is entitled to summary judgment on account of qualified

4

immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. ----, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quotation omitted). The defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

There is no dispute that Officer Atiles was acting within her discretionary authority. *See Kelly*, 21 F.3d at 1550. Accordingly, the qualified immunity analysis proceeds in two steps. *Pearson*, 129 S. Ct. at 815. First, do the facts establish the violation of a constitutional right? *Id.* at 815-16. Second, was the right at issue "clearly established" at the time the alleged wrong occurred? *Id.* at 816. The steps need not be addressed in a particular order. *See id.* at 818.

### 1.  *Violation of a constitutional right*

#### a.  *Absence of arguable probable cause*

There is a "causal link" between a warrant application and the resulting arrest. *Malley*, 475 U.S. at 344 n.7, 106 S. Ct. at 1098 n.7. Therefore, a constitutional violation may arise when an arrest warrant is obtained by an affidavit lacking in probable cause. *See id.* at 344-45, 106 S. Ct. at 1098. Accordingly, where the alleged unconstitutional arrest occurred pursuant to a warrant, the focus is on "the contents of the affidavit that was presented in support of the arrest warrant." *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1186 (M.D. Fla. 2008).

As long as the affidavit is supported by "arguable probable cause," qualified immunity will protect the officer. *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992).[1] Arguable probable

---

[1] Although *Lowe* involved a search warrant application, the qualified immunity analysis is the same. *See Malley*, 475 U.S. at 344 n.6, 106 S. Ct. at 1098 n.6; *see also Brown v. Abercrombie*, 151 F. App'x 892, 893 (11th Cir. 2005) (applying arguable probable cause standard to application for arrest warrant).

cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Id.* "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341, 106 S. Ct. at 1096. In cases of mistaken identity, where an officer erroneously swears an affidavit for the wrong party, qualified immunity will apply if the mistake was "reasonable." *See Tillman v. Coley*, 886 F.2d 317, 320 (11th Cir. 1989) (citing *Hill v. California*, 401 U.S. 797, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971)). The inquiry therefore turns on "whether a reasonably well-trained officer," in the same circumstances and possessing the same knowledge as Officer Atiles, "would have known that [her] affidavit failed to establish probable cause" for the arrest of Thornton "and that [she] should not have applied for the warrant." *See Malley*, 475 U.S. at 345, 106 S. Ct. at 1098; *Kelly*, 21 F.3d at 1555.

Officer Atiles averred that she only placed Thornton in her report because the other officers identified him. It is true that probable cause may be based on the collective knowledge of the police in certain circumstances. *See*, e.g., *United States v. Ventresca*, 380 U.S. 102, 111, 85 S. Ct. 741, 747, 13 L. Ed. 2d 684 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."). Notwithstanding, the evidence viewed in the light most favorable to Plaintiff demonstrates that Officer Atiles viewed a photograph of Thornton before identifying him as the man involved in the drug transaction.[2] No one has argued that Thornton bears a resemblance to the man in the video or

---

[2] Officer Atiles protests that the photograph is not part of the record. Hence, she argues, there is no evidence that she actually viewed a picture of Thornton. For summary judgment purposes, all reasonable inferences must be drawn in favor of Thornton, including the inference that the photograph Officer Atiles used to make the identification was indeed a picture of Thornton. At most, there is a genuine issue of material fact as to whether she examined a picture of Thornton or a different individual.

that his picture could reasonably be mistaken for that of the man who sold crack cocaine to Officer Atiles.[3] Accordingly, in light of the photograph, Officer Atiles "could not rely solely on . . . a fellow police officer's belief that the name was correct." *Tillman*, 886 F.2d at 321. Indeed, there is no evidence that Officer Neal even witnessed the transaction. No reasonably competent officer, having examined a photograph of Thornton and possessing the knowledge that the officer who identified Thornton did not witness the incident, would have concluded that a warrant should issue for his arrest. *See Malley*, 475 U.S. at 341, 106 S. Ct. at 1096.

Admittedly, there is no evidence that Thornton was arrested solely for purposes of identification, as in *Tillman*. *See Tillman*, 886 F.2d at 320. Nor is there evidence that Officer Atiles harbored subjective doubts as to the proper identification of Thornton. *See id.* at 321. The question, however, is whether a reasonable officer would have been sufficiently concerned to make further investigation given the facts and circumstances. *See id.* (noting a "reasonable police officer would have been sufficiently concerned by the age discrepancy of a generation to make further investigation as to whether the Mary Tillman he knew had a daughter or a niece"). Although an officer need not take every conceivable step to eliminate the possibility of arresting an innocent person, it simply cannot be said that a reasonably competent officer would have believed that no further investigation was necessary before swearing an affidavit for Thornton's arrest. *See id.* At the very least, Officer Atiles could have compared the photograph of Thornton with the videotape of the drug transaction. Based on the facts as construed for summary judgment purposes, the mistaken identification was unreasonable and therefore in violation of Thornton's Fourth Amendment rights. *See id.* at 320.

---

[3] Officer Atiles averred that she cannot verify that the videotape depicted the same events listed in the report, rather than a different undercover transaction. (Atiles Aff. ¶ 22). It is undisputed that the videotape was provided in connection with the criminal prosecution of Thornton, which supports the reasonable inference that the videotape related to the events in the affidavit.

### b. *False or reckless statements*

Officer Atiles argues that there is no evidence demonstrating that she intentionally or recklessly identified Plaintiff in connection with the drug transaction captured in her report. On this summary judgment record, the Court disagrees.

It is well-established that "a police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003). Although the Fourth Amendment does not require that statements in a warrant application be "objectively accurate," the averments must at least "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* (quotation omitted). Accordingly, "cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant" will violate the Fourth Amendment. *Kelly*, 21 F.3d at 1554. However, "the rule does not apply to negligent misrepresentations or omissions." *Id.*

An arrest warrant was obtained based on Officer Atiles' sworn statement that Thornton was the man involved in the transaction. The facts, for purposes of summary judgment, demonstrate that Officer Atiles viewed a photograph of Thornton before signing the affidavit. As noted, there is no contention that Thornton resembles the man in the videotape. Her sworn statement was therefore not "appropriately accepted by the affiant as true." *See id.* at 1555. Having signed the affidavit in reckless disregard for the accuracy of its contents, Officer Atiles is not entitled to qualified immunity. *See Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999) (officer not entitled to qualified immunity where false statements are necessary to finding of probable cause).

### 2. *Clearly established constitutional right*

Long before the events in this case, it was clearly unconstitutional for an officer to swear an

affidavit based solely on a fellow officer's identification of a suspect where the facts and circumstances would cause a reasonable officer to be sufficiently concerned about the suspect's identity. *See Tillman*, 886 F.2d at 321. It was equally well-established that a constitutional violation arises when an officer signs a probable cause affidavit which no reasonable well-trained officer would have believed established probable cause. *Malley*, 475 U.S. at 345, 106 S. Ct. at 1098. Nor was there any question that an officer could not aver recklessly false statements in support of a warrant. *See, e.g., Holmes*, 321 F.3d at 1083-84; *Kelly*, 21 F.3d at 1554-55. Officer Atiles is therefore not entitled to qualified immunity at the summary judgment stage.

B.     *The City of Tampa*

In Count I, Plaintiff asserts a claim for false arrest and false imprisonment against the City of Tampa. Defendant correctly contends that there can be no cause of action for false arrest and false imprisonment because Plaintiff was arrested on a facially valid arrest warrant.

In Florida, an arrest and imprisonment "under process regular and in legal form issued by lawful authority" is not false. *Erp v. Carroll*, 438 So. 2d 31 (Fla. 5th DCA 1983); *Jackson v. Navarro*, 665 So. 2d 340 (Fla. 4th DCA 1995); *Willingham v. City of Orlando*, 929 So. 2d 43, 48-50 (Fla. 5th DCA 2006); *Dodson v. Soloman*, 183 So. 825 (Fla. 1938) ("If the imprisonment is under legal authority it may be malicious but it cannot be false. This is true where legal authority is shown by valid process, even if irregular or voidable."). The underlying premise of these holdings is that a law enforcement officer exercises no discretion in executing a warrant issued by a judge because the officer has a duty to give the warrant full effect. *Willingham v. City of Orlando*, 929 So. 2d at 50.[4]

---

[4] Although not cited by the parties, at least two district courts have held that a false arrest claim may lie against an officer who *executes* an arrest warrant which the officer personally obtained by making false representations in the supporting affidavit. *See Nixon v. Rutherford*, No. 3:07-cv-1000-J-12TEM, 2008 WL 321490, at *1 (M.D. Fla. Feb. 1, 2008); *Andrew Nguyen MD PA v. Estate of Carlisle*, No. 1:04-cv-00026-MP-AK, 2007 WL 1560149, at *4 (N.D. Fla.

Plaintiff's only argument against summary judgment on Count I is that "the warrant issued in this case was purely ministerial, as opposed to the product of an independent assessment of probable cause by a judicial officer." (Dkt. 16, p. 17). Plaintiff relies on *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406 (11th Cir. 1989). Plaintiff's reliance on *Garmon* is misplaced.

In *Garmon,* the plaintiff brought a §1983 action against the Sheriff who directed her arrest and the County in which she was arrested. Defendants contended that they were insulated from liability because the plaintiff's arrest was based on an arrest warrant issued by a magistrate. In rejecting that contention, the Eleventh Circuit found that "[f]rom the face of the arrest warrant it is evident that it was issued without probable cause." 878 F.2d at 1408. The court reasoned that "[b]ecause the affidavit contained nothing but the investigator's conclusion that [plaintiff] had committed the crime, the magistrate could not possibly have conducted the independent assessment required by the fourth amendment . . ." *Id.* at 1409.

By contrast, in this case, the arrest warrant was facially valid. Atiles' criminal report affidavit contained factual averments describing the commission of the offense, and, albeit erroneous, Plaintiff's involvement. (Dkt. 23). Notwithstanding the nonsensical statement "Affiant positively identified by Affiant," the affidavit clearly identified Plaintiff as the perpetrator of the offense. The warrant application in this case therefore permitted the circuit judge to make an independent assessment of probable cause, unlike the magistrate in *Garmon*.

Further, as noted, *Garmon* involved a section 1983 action, rather than a state law false arrest claim. *Garmon* does not hold, expressly or otherwise, that an arrest warrant issued by a magistrate

May 23, 2007). The district courts held that because the arresting officer obtained the warrant by false averments, and thereafter executed the warrant, the officer was not entitled to rely upon its facial validity. *See id.*; *but see Jackson*, 665 So. 2d at 342 (false arrest claim precluded because arrest was based on a capias, notwithstanding that officer who prepared probable cause affidavit participated in arrest). Here, there is no suggestion that Officer Atiles herself executed the warrant.

who did not conduct an independent probable cause assessment is void for purposes of a false arrest claim.[5] Indeed, Florida courts have rejected a similar argument. *Jackson*, 665 So. 2d at 341 (false imprisonment claim could not be based on arrest made pursuant to capias, even if supporting affidavits were "so lacking in indicia of probable cause as to render official belief in its existence unreasonable.")(quoting *Malley*, 475 U.S. at 345, 106 S. Ct. at 1098). *Jackson* specifically rejected the argument that *Malley*, on which *Garmon* relied, had any application to false imprisonment cases brought under Florida law. *Id.*[6]

Accordingly, Defendants' motion for summary judgment (Dkt. 14) is **GRANTED** as to Count I and summary judgment is entered in favor of the City of Tampa. The motion is **DENIED** in all other respects.

**DONE AND ORDERED** in chambers this 2 day of February, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[5] Plaintiff does not contend that his arrest warrant constituted "void process." Indeed, the circumstances in which warrants have been found void are not present here. *See, e.g., Montejo v. Martin Mem. Med. Center, Inc.*, 935 So. 2d 1266, 1268-69 (Fla. 4th DCA 2006) (void deportation order because court lacked subject matter jurisdiction could support false imprisonment claim); *Jibory v. City of Jacksonville*, 920 So. 2d 666, 667 (Fla. 1st DCA 2005) (false imprisonment claim could be based on arrest pursuant to warrant which had previously been executed and was therefore void). At most, the inclusion of recklessly false statements in Officer Atiles' affidavit rendered the warrant voidable, not void. *See, e.g., Pagan v. State*, 830 So. 2d 792, 807 (Fla. 2002).

[6] Plaintiff's complaint against the City of Tampa is more akin to an action for malicious prosecution, as it "arises out of the wrongful commencement of a judicial proceeding." *See Jackson*, 665 So. 2d at 342. The practical effect, however, is that even a claim for malicious prosecution must fail in this case. The State of Florida has waived sovereign immunity for tort claims against its political subdivisions, including the City of Tampa, but only insofar as the acts were not "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." Fla. Stat. §§ 768.28(1), (9). Because "malice" is an essential element of a malicious prosecution action, it is well-settled that a claim for malicious prosecution cannot be brought against a municipality. *See, e.g., Johnson v. State Dept. of Health & Rehab. Servs.*, 695 So. 2d 927, 930 (Fla. 2d DCA 1997).